UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. __19mj3349-Reid__

UNITED STATES OF AMERICA

v.

CHRISTOPHER DANIEL STINES,

          Defendant.
_____ /

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? ___ Yes ✓ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? ___ Yes ✓ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _____
Eli S. Rubin
ASSISTANT UNITED STATES ATTORNEY
District Court No. A5502535
99 N.E. 4th Street
Miami, Florida 33132
Tel:   (305) 961-9247
Fax:  (305) 536-4699
Email:  Eli.Rubin@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>CHRISTOPHER DANIEL STINES,<br><br>_Defendant(s)_ | )<br>)<br>) Case No. 19mj 3349- Reid<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __August 22, 2019,__ in the county of __Miami-Dade__ in the
__Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 554 | Smuggling goods from the United States |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Elvis Corrales, Special Agent, HSI
_Printed name and title_

Sworn to before me and signed in my presence.

Date: __08/23/2019__

_____
_Judge's signature_

City and state: __Miami, Florida__  HON. LISETTE M. REID, U.S. MAGISTRATE JUDGE
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Elvis Corrales, Special Agent of Homeland Security Investigations ("HSI"), being duly sworn, hereby states as follows:

### INTRODUCTION

1. I have been a Special Agent with HSI in Miami, Florida, for over twelve (12) years, during which time I have been involved in numerous investigations involving weapons trafficking, narcotics trafficking, and money laundering. Prior to this assignment, for seven (7) years, I was a Customs Inspector with United States Customs and Border Protection ("CBP") assigned to the Miami Office of Field Operations, where I worked on cases involving narcotics trafficking, narcotics proceeds, merchandise and weapons smuggling, and terrorist weaponry. I have received numerous hours of specialized training in U.S. Customs, Immigration laws, and investigative methods. As a result of my training and experience, I understand how weapon traffickers and weapon-trafficking organizations communicate with each other; purchase, transport, store, and distribute weapons; and conceal profits generated from those transactions.

2. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code.

3. My knowledge of the facts alleged in this Affidavit arises from my personal knowledge and observations, my training and experience, and information obtained from other law enforcement officers. This Affidavit does not include every fact known to me concerning this ongoing investigation. I have included only those facts and circumstances that I believe are sufficient to establish probable cause for the arrest of Christopher Daniel **STINES** (hereinafter "**STINES**").

## RELEVANT STATUTES

4. In furtherance of the national security and foreign policy interests of the United States, the United States regulates and restricts the export of arms, munitions, implements of war, and defense articles pursuant to the Arms Export Control Act (the "AECA"), codified at Title 22, United States Code, Section 2778.

5. A principal purpose of these laws is to provide accurate and truthful information to the United States to allow departments of the United States government to monitor and control the distribution, exportation, and delivery of defense articles.

6. The regulations that govern such exports are the International Traffic in Arms Regulations (the "ITAR"), codified at Title 22, Code of Federal Regulations, Sections 120-130. Included in the ITAR is a list of defense articles and defense services that are subject to control. This list, found in Title 22, Code of Federal Regulations, Section 121.1, is called the United States Munitions List ("USML").

7. Title 18, United States Code, Section 554 provides, in relevant part, "Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be . . . imprisoned not more than 10 years . . . ."

## PROBABLE CAUSE

8. On or about August 22, 2019, CBP Officers at Miami International Airport, located in Miami, Florida, conducted an outbound border search of passengers and their belongings aboard

Air France flight 619 departing Miami, Florida, and scheduled to arrive in Port au Prince, Haiti. Upon inspecting the checked luggage of **STINES**, a Haitian citizen in the United States on a B1/B2 nonimmigrant visa for pleasure, CBP officers discovered twenty-three (23) AR-15 assault rifle weapon parts. Specifically, officers found eight (8) AR-15 Triggers, five (5) AR-15 Selector Switches, three (3) AR-15 Hammers, two (2) AR-15 Disconnectors, three (3) AR-15 Hammer and Trigger Pins, and two (2) AR-15 Trigger Guards. These AR-15 assault rifle parts are regulated export-controlled items by ITAR under the UMSL. Anyone seeking to export them is required to obtain an export license from the Department of State.

9. A search of United States government databases indicated that **STINES** had not obtained the required license prior to attempting to depart the United States for Haiti with the 23 AR-15 assault rifle weapon parts.

10. On August 22, 2019, CBP and HSI agents read **STINES** his *Miranda* rights. He subsequently executed a written *Miranda* waiver and agreed to be interviewed. **STINES** stated that he previously purchased weapon parts approximately two (2) to four (4) times through the websites of different vendors. A border search of his iPhone X, however, revealed more than 20 invoices from different vendors of weapon parts dating back to 2012. The invoices were e-mailed to CSTINES[XX]@hotmail.com and were located within the iPhone X's e-mail application.[1]

11. During the interview, **STINES** said that he did not know that he needed a license to export the AR-15 assault rifle weapon parts. However, I contacted two vendors from whom **STINES** has purchased weapon parts, Brownells and Loham Arms, and both stated that the invoices provided to customers upon purchase contains notices of export regulations related to the weapon parts being exported out of state and/or the United States.

---

[1] **STINES**'s iPhone was located on his person.

12. Based upon the foregoing, I submit that there is probable cause to believe that **STINES** knowingly and willfully attempted to export from the United States to Haiti, without license, twenty-three (23) AR-15 assault rifle weapon parts, specifically; eight (8) AR-15 Triggers, five (5) AR-15 Selector Switches, three (3) AR-15 Hammers, two (2) AR-15 Disconnectors, three (3) AR-15 Hammer and Trigger Pins, and two (2) AR-15 Trigger Guards, in violation of Title 18, United States Code, Section 554.

FURTHER AFFIANT SAYETH NAUGHT

_____
Elvis Corrales
Special Agent, Homeland Security Investigations

Subscribed to and sworn before me on this __23rd__ day of August 2019:

_____
HONORABLE LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

4